# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **LORRAINE DUGGIN, individually and as Co-Special Administrator for the Estate of Susan D. Kiscoan, deceased; and JOHN (JACK) KISCOAN, individually and as Co-Special Administrator for the Estate of Susan D. Kiscoan, deceased;** | **8:19CV453** |
| **Plaintiffs,** | **MEMORANDUM AND ORDER** |
| **vs.** | |
| **THE CITY OF OMAHA, NEBRASKA, DAVID VOLENEC, MICHAEL JENKINS, CORTES CLARK, and DOES 1-10,** | |
| **Defendants.** | |

This matter is before the Court on the Motion to Dismiss for Failure to State a Claim, ECF No. 6, filed by Defendants City of Omaha, David Volenec, Michael Jenkins, and Cortes Clark. For the following reasons, the Motion will be granted in part.

## BACKGROUND

The following facts are those alleged in the Complaint, ECF No. 1-1, and are assumed true for purposes of this motion.

Susan Kiscoan was diagnosed with Addison's Disease[1] in 2012. On or about September 14, 2017, Susan walked to the Omaha airport seeking medical help. Paramedics assisted Susan and found that she appeared to be dehydrated. Paramedics

---

[1] Addison's Disease is "a rare but serious adrenal gland disorder in which the body cannot produce enough of two critical hormones, cortisol and aldosterone." Compl. ¶ 21, ECF No. 1-1 at Page ID # 7.

transported Susan to the CHI Health – University Campus (University Clinic) for further care.

When they arrived, paramedics notified the emergency room nurses of Susan's possible mental illness. Susan refused treatment at the University Clinic and asked to be taken to Lakeside Hospital. Emergency room staff informed Susan that if she refused treatment, she had a right to leave against medical advice and find her own transportation to Lakeside Hospital. The University Clinic staff eventually told Susan that she must leave the facility. She refused to leave, and emergency room staff contacted the Omaha Police Department (OPD).

Officers Jenkins and Clark, law enforcement officers employed by the OPD, were dispatched to the University Clinic for a party refusing to leave the premises. They arrived at shortly after 3:30 p.m. that afternoon. When they arrived, Officers Jenkins and Clark made contact with the University Clinic security staff and Sergeant Volenec, also a law enforcement officer with the OPD. Officers Jenkins and Clark advised Susan to leave the premises, but she refused.

Officers Jenkins and Clark arrested Susan and transported her to the Douglas County Correctional Center (Correctional Center). She was booked for trespassing and taken into custody of the Correctional Center.

Susan died on September 28, 2017. Plaintiffs Lorraine Duggin and Jack Kiscoan, Susan's parents, bring this suit individually and as co-special administrators of Susan's estate. Plaintiffs allege that Defendants were negligent and violated Susan's civil rights by arresting her instead of taking her into protective custody and, as a result, Susan suffered serious and permanent injuries.

Plaintiffs filed this action in the District Court of Douglas County, Nebraska, on September 12, 2019, ECF No. 1-1. On October 16, 2019, Defendants removed the case to this Court, ECF No. 1. On November 18, 2019, Defendants filed this Motion to Dismiss, ECF No. 6.

## STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy this requirement, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Corrado v. Life Inv'rs Ins. Co. of Am.*, 804 F.3d 915, 917 (8th Cir. 2015) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678), *cert. denied*, 135 S. Ct. 2941 (2015). The complaint's factual allegations must be "sufficient to 'raise a right to relief above the speculative level.'" *McDonough v. Anoka Cty.*, 799 F.3d 931, 946 (8th Cir. 2015) (quoting *Twombly*, 550 U.S. at 555). The Court must accept factual allegations as true, but it is not required to accept any "legal conclusion couched as a factual allegation." *Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 373 (8th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678). Thus, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a

cause of action will not do.'" *Ash v. Anderson Merchandisers, LLC*, 799 F.3d 957, 960 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678), *cert. denied*, 136 S. Ct. 804 (2016).

On a motion to dismiss, courts must rule "on the assumption that all the allegations in the complaint are true," and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 555 & 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Mickelson v. Cty. of Ramsey*, 823 F.3d 918, 923 (8th Cir. 2016) (alteration in original) (quoting *Iqbal*, 556 U.S. at 679).

## DISCUSSION

Plaintiffs bring a two-count complaint alleging negligence and violation of civil rights under 42 U.S.C. § 1983. Defendants move to dismiss the individual Defendants in their official capacities due to the City being a Defendant, the negligence claims due to sovereign immunity, and the § 1983 claims due to failure to state a claim.

## I.    Official Capacity Claims against City Officials

Defendants argue that because the City is a named Defendant, the inclusion of the individual Defendants in their official capacities is redundant and they should be dismissed.[2]  It is true that "[c]laims against individuals in their official capacities are

---

[2] The Complaint does not name the Defendants in their individual capacities.  Thus, the Court assumes that Plaintiffs only bring these claims against Defendants in their official capacities.  *See Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) ("This court has held that, in order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity." (citing *Artis v. Francis Howell North Band Booster Ass'n Inc.*, 161 F.3d 1178, 1182 (8th Cir. 1998); *Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997))).

4

equivalent to claims against the entity for which they work . . . ." *Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998) (citing *Hafer v. Melo*, 502 U.S. 21, 24–27 (1991)).  However, this redundancy alone does not necessitate dismissal of Plaintiffs' official-capacity claims.  *See, e.g.*, *Chalepah v. City of Omaha*, No. 8:18-CV-381, 2019 WL 802094, at *3 (D. Neb. Feb. 21, 2019); *Higgins v. Dankiw*, No. 8:08CV15, 2008 WL 5282925, at *5 (D. Neb. Dec. 18, 2008) (listing cases in which city officials were sued in their official capacities while the city is also a named party).

## II.     First Cause of Action – Negligence

Plaintiffs allege Defendants negligently chose to arrest Susan rather than take her into protective custody, and the City negligently failed to train, supervise, and monitor its police officers.  These claims are brought pursuant to the Nebraska Political Subdivision Tort Claims Act (PSTCA), Neb. Rev. Stat. § 13-901 *et seq.*  Compl. ¶ 19, ECF No. 1-1.  Defendants argue that these claims are not subject to the waiver of sovereign immunity under the discretionary function exception to the PSTCA.

The PSTCA "eliminates, in part, the traditional immunity of political subdivisions for the negligent acts of their employees."  *Doe v. Omaha Pub. Sch. Dist.*, 727 N.W.2d 447, 453 (Neb. 2007) (citing *Talbot v. Douglas Cty.*, 544 N.W.2d 839 (Neb. 1996)).  The PSTCA is to be construed "in favor of the political subdivision and against the waiver of sovereign immunity."  *McKenna v. Julian*, 763 N.W.2d 384, 390 (Neb. 2000), *abrogated on other grounds by Doe v. Bd. of Regents of Univ. of Neb.*, 788 N.W.2d 264 (Neb. 2010) (citing *Geddes v. York Cty.*, 729 N.W.2d 661 (2007)).

*A.  Negligent Arrest and Failure to Take Susan into Emergency Protective Custody*

"[A] plaintiff may not recover for a claim 'based upon the exercise or performance of or the failure to exercise or perform a discretionary function or duty on the part of the

political subdivision or an employee of the political subdivision." *Larson v. Miller*, 76 F.3d 1446, 1456 (8th Cir. 1996) (en banc) (quoting Neb. Rev. Stat. § 13-910(2)). This exception "extends only to basic policy decisions made in governmental activity, and not to ministerial activities implementing such policy decisions." *Omaha Pub. Sch. Dist.*, 727 N.W.2d at 456–57.

Nebraska courts follow a two-step analysis to determine if the discretionary function exception applies:

> First, the court must consider whether the action is a matter of choice for the acting employee. If the court concludes that the challenged conduct involves an element of judgment, it must then determine whether that judgment is of the kind that the discretionary function exception was designed to shield.

*Omaha Pub. Sch. Dist.*, 727 N.W.2d at 457 (citing *Aguallo v. City of Scottsbluff*, 678 N.W.2d 82 (Neb. 2004); *Parker v. Lancaster Cty. Sch. Dist. No. 001*, 591 N.W.2d 532 (Neb. 1999)).

Under the first step, courts assess whether the "challenged conduct involves an element of judgment . . . ." *Aguallo*, 678 N.W.2d at 91. Plaintiffs allege Defendants were negligent for arresting Susan rather than putting her in emergency protective custody as authorized under Nebraska law. Nebraska law states:

> A law enforcement officer who has probable cause to believe that a person is mentally ill and dangerous . . . and that the harm described in section 71-908 . . . is likely to occur before mental health board proceedings under the Nebraska Mental Health Commitment Act . . . may be initiated to obtain custody of the person *may* take such person into emergency protective custody . . . .

Neb. Rev. Stat. § 71-919 (emphasis added). Under Nebraska's rules of statutory construction, "[w]hen the word may appears, permissive or discretionary action is presumed . . . ." Neb. Rev. Stat. § 49-802. It is therefore an exercise of judgment and

discretion whether to take a person into emergency protective custody under section 71-919. Under the first prong of the analysis, the "action is a matter of choice for the acting employee." *Omaha Pub. Sch. Dist.*, 727 N.W.2d at 457 (citations omitted).

Under the second step, courts must ask whether the action is the type "the discretionary function exemption was designed to shield." *Aguallo*, 678 N.W.2d at 91 (citing *Parker*, 591 N.W.2d at 532). The purpose of the exemption is to

> "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." The exemption, properly construed, therefore protects only governmental actions and decisions based on concerns of public policy. "In sum, the discretionary function exception insulates the Government from liability if the action challenged in the case involves the permissible exercise of policy judgment."

*Id.* (quoting *Parker*, 591 N.W.2d at 540). "[T]he State is liable for negligence of its employees at the operational level, where there is no room for policy judgment." *Jasa v. Douglas Cty.*, 510 N.W.2d 281, 288 (Neb. 1994) (quoting *Wickersham v. State*, 354 N.W.2d 134, 138–39 (Neb. 1984)). "When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a government agent to exercise discretion, it must be *presumed* that the agent's acts are grounded in policy when exercising that discretion." *Williams v. City of Lincoln*, 932 N.W.2d 490, 501 (Neb. Ct. App. 2019) (emphasis in original) (citing *United States v. Gaubert*, 499 U.S. 315 (1991)). When a statute does not specify the manner in which the policy is to be carried out, the policy judgment is left to the agent of the government. *Id.* at 500–02 (analyzing discretionary function exceptions under the Federal Tort Claims Act in *Merando v. United States*, 517 F.3d 160 (3d Cir. 2008), and *Autery v. United States*, 992 F.2d 1523 (11th Cir. 1993)).

The regulation at issue in *Williams* required the City of Lincoln to maintain its trees and sidewalks in a reasonably safe condition, however it did not specify the location, timeframe, or manner in which the trees were to be maintained. Because it left these decisions to the City of Lincoln and its agents, the Nebraska Court of Appeals found that the discretionary function exception applied, and the City of Lincoln was immune from suit under the PSTCA.

Under the same two-step analysis applied by Nebraska courts, the Eighth Circuit found that a law enforcement officer's decisions to initiate and terminate an arrest fell under the discretionary function exception under the Federal Tort Claims Act, 28 U.S.C. § 2680(a). *Deuser v. Vecera*, 139 F.3d 1190, 1195 (8th Cir. 1998). Under the first prong, the court found that it is impossible to define every possible scenario a law enforcement officer might encounter and decide how the officer should respond. *Id.* Under the second prong, the court stated that if an authority is discretionary, "the very existence of the [provision] creates a strong presumption that a discretionary act authorized by the [provision] involves consideration of the same policies which led to the promulgation of the [authority]." *Id.* (quoting *United States v. Gaubert*, 499 U.S. 315, 323 (1991)).

The question is, then, whether a law enforcement officer's choice to arrest a person rather than to exercise authority under section 71-919 is a policy judgment or a ministerial act—carrying out, or failing to carry out, a directive of the legislature. The statute at issue here does not state with any specificity when individuals are to be taken into emergency protective custody. This decision requires the officer to decide whether there is "probable cause to believe that a person is mentally ill and dangerous . . . ." Neb. Rev. Stat. § 71-919. This presumably involves consideration of the policies the legislature considered

when it promulgated section 71-919.  *See Deuser*, 139 F.3d at 1195; *Williams*, 932 N.W.2d at 501.  It must be inferred that the legislature did not intend to waive sovereign immunity for the performance of this function.  Therefore, Count I will be dismissed to the extent it alleges Defendants were negligent for arresting Susan rather than taking her into emergency protective custody.

### B.  Negligent Failure to Train, Supervise, and Monitor

Plaintiffs' remaining claim is that the City negligently failed to train, supervise, and monitor its police officers.  Under Nebraska law, such claims function as a means of assessing liability against the employer for the torts of its employees and cannot exist without underlying liability of the agent.  *Rand v. Stanosheck*, No. 8:18CV481, 2019 WL 3777956, at *4 (D. Neb. Aug. 12, 2019) (citing *Harrington v. Hall Cty. Bd. of Supervisors*, No. 4:15-CV-3052, 2016 WL 1274534, at *11 (D. Neb. Mar. 31, 2016); *Schieffer v. Catholic Archdiocese of Omaha*, 508 N.W.2d 907, 913 (Neb. 1993); *Greening v. Sch. Dist. of Millard*, 393 N.W.2d 51, 58 (Neb. 1986); *Gertsch v. Gerber*, 226 N.W.2d 132, 134 (Neb. 1975)).

The Nebraska Supreme Court has held that with respect to any claim based upon "the mere fact of government employment . . . or on the employment relationship between the intentional tort-feasor and the government (such as a negligent supervision or negligent hiring claim), the exception in § 81-8,219(4) applies and the State is immune from suit."  *Johnson v. State*, 700 N.W.2d 620, 625 (Neb. 2005).  The court in *Johnson* determined that to find otherwise would be to permit a plaintiff to circumvent the exceptions included in the State Tort Claims Act (STCA), Neb Rev. Stat. § 81-8,209 *et seq.*, by directing a claim against the State rather than the employee.  *Johnson* has only

been applied to claims brought against the government for the intentional torts of employees. However, it is likely the Nebraska Supreme Court would arrive at the same conclusion here. Because these claims are merely a means of assessing liability against the employer for the torts of its employees, if the employees may not be found liable due to an exception to the PSTCA's waiver of sovereign immunity then the City may not be found liable under a claim of negligent failure to train, supervise, or monitor the employees. Therefore, Count I also will be dismissed in its entirety.

## III. Second Cause of Action – Violation of Civil Rights Under § 1983

Plaintiffs allege several violations of Susan's rights under 42 U.S.C. § 1983. They allege Defendants used excessive force against Susan, unlawfully detained her, and unlawfully denied her medical care.

Because the claim is brought against the individual Defendants in their official capacites, Plaintiffs' claims allege liability solely against the City of Omaha.[3] Any claim brought under § 1983 against a municipality must allege a "municipal policy or custom is the moving force behind [the alleged] constitutional violation . . . ." *Wedemeier v. City of Ballwin*, 931 F.2d 24, 26 (8th Cir. 1991) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978)). A municipality's failure to act which "reflects a 'deliberate' or 'conscious' choice" may also rise to the level of a policy for purposes of a § 1983 violation. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) ("Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by our prior cases—can a city be liable for such failure under § 1983."). The focus of the analysis of such deliberate indifference claims "must be on adequacy of the training program in

---

[3] *See supra* note 2.

relation to the tasks the particular officers must perform." *Id.* at 390. In other words, "[plaintiffs] must . . . prove that the deficiency in training actually caused the police officers' indifference to her medical needs." *Id.* at 391. This is a question of fact. *Id.*

The Complaint alleges the City failed to train its employees to handle situations involving mentally ill persons. Plaintiffs generally allege Defendants' conduct resulted from an official policy and failure to train. Compl. ¶ 43, ECF No. 1-1. Under the header "Excessive Force and Unlawful Detention," Plaintiffs allege the City failed to train its law enforcement officers how to handle the risks involved in interactions with mentally ill persons. Compl. ¶ 46, ECF No. 1-1. Under the header "Unlawful Denial of Medical Care," Plaintiffs allege the City failed to train its employees to identify the needs of the mentally ill and that as a result, the officers impeded Susan's ability to provide for her basic needs and substantially and permanently injured her. Compl. ¶¶ 52–55, ECF No. 1-1. Plaintiffs' § 1983 claim is cognizable to the extent it alleges a failure to train by the City. However, Count II is dismissed insofar as it alleges excessive force, unlawful detention, or unlawful denial of medical care by the individual defendants.

Accordingly,

IT IS ORDERED

1.　Defendants' Motion to Dismiss, ECF No. 6, is granted in part;

　　a.　Count I of the Complaint is dismissed;

　　b.　Count II of the Complaint is dismissed to the extent it alleges anything other than a failure to train on the part of the City;

2.　Defendants' Motion to Dismiss, ECF No. 6, is otherwise denied.

Dated this 24th day of January, 2020.

BY THE COURT:

s/Laurie Smith Camp
Senior United States District Judge