# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LORRAINE DUGGIN and JOHN (JACK) KISCOAN, individually and as Co-Special Administrators for the Estate of SUSAN D. KISCOAN, deceased,<br><br>        Plaintiffs,<br><br>vs.<br><br>THE CITY OF OMAHA, NEBRASKA,<br><br>        Defendant. | **Case No. 8:19-cv-453** |

## BRIEF IN SUPPORT OF MOTION
## FOR SUMMARY JUDGMENT

Prepared and submitted by:
MICHELLE PETERS, No. 20021
Deputy City Attorney, and
JARED DEAN, No. 26314
Assistant City Attorney
Attorneys for Defendant
804 Omaha/Douglas Civic Center
1819 Farnam Street
Omaha, NE 68183
Telephone:  402/444-5115
Fax:  402-444-5125
Email:  michelle.peters@cityofomaha.org

# INTRODUCTION

Defendant City of Omaha, pursuant to Fed. R. Civ. P. Rule 56, respectfully moves this Court to dismiss the Complaint of Plaintiff because there are no material facts in dispute and Defendant is entitled to judgement as a matter of law.

Plaintiff's Complaint generally alleges that the Mental Health Response Police of the Omaha Police Department is unconstitutional, and the Omaha Police Department training was deliberately indifferent to the rights of Ms. Kiscoan.

# BACKGROUND AND PROCEDURAL HISTORY

This lawsuit arises from an interaction Susan Kiscoan had with Omaha police officers on September 14, 2017. On that day Ms. Kiscoan was transported from the Omaha Airport to the CHI Health Clinic. Once at the clinic she refused medical treatment and then she refused to leave the Clinic. Security staff contacted Omaha police to have her removed. Omaha Police responded and tried to get Ms. Kiscoan to leave the premises voluntarily, but she continued to refuse to leave, so she was ultimately cited for trespassing and the officers transported to the Douglas County Correctional Center. She died two weeks later at the Correctional Center. Generally, Plaintiffs allege that the Officers should have placed Ms. Kiscoan in Emergency Protective Custody rather than arresting her.

On November 18, 201, the City of Omaha Officers Michael Jenkins, Cortes Clark, and Sergeant David Volenec filed a Motion to Dismiss. [Doc. #6] This Court granted Defendant's Motion, in part, dismissing Plaintiffs' First Cause of Action (negligence) and with regard to the Second Cause of Action for violation of Section 1983, dismissed the all claims alleging excess force, unlawful detention or unlawful denial of medical care. The only claim therefor remaining

1

is Plaintiff's § 1983 claim to the extent it alleges failure to train officers to identify the needs of the mentally ill. (See Order, Doc. #11, pg. 11).

The City's policy on dealing with persons with Mental Health issues is facially constitutional, and there is no evidence in the record of deliberate indifference in Officer Jenkins, Clark, or Sgt. Volenec's training which could be causally linked to Ms. Kiscoan's death. Judgment must therefore be entered in favor of the City of Omaha, and the Plaintiff's Complaint must be dismissed with prejudice.

## STATEMENT OF UNDISPUTED FACTS

1. On September 14, 2017, Omaha paramedics came into contact with Ms. Kiscoan at the Omaha Airport and she appeared to be dehydrated. (Complaint, Doc. #1, ¶ 22-23).

2. The paramedics transported Ms. Kiscoan to CHI Emergency for treatment. (Complaint, Doc. #1, ¶ 24).

3. Once at the ER, Ms. Kiscoan refused medical treatment. (Complaint, Doc. #1, ¶26).

4. Hospital staff advised her that if she refused treatment, she would have to leave and find her own transportation to another facility. (Complaint, Doc. #1, ¶ 27).

5. Ms. Kiscoan refused to leave and CHI staff contacted the Omaha Police Department for assistance. (Complaint, Doc. #1, ¶ 29).

6. Sgt. Volenec, on September 14, 2017, was working as an off-duty police officer, assisting security at the CHI Health Clinic. (Volenec Depo. 8-9:16-3).

7. Sgt. Volenec has a limited function as an off-duty police officer, and his primary role on the September 14, 2017 is to help CHI security escort out Ms. Kiscoan when she refused treatment, and refused to leave the property. (Volenec Depo. 45-47 and 21-22).

8. Officers Michael Jenkins and Cortez Clark were dispatched to the hospital and made contact with security, who indicated Ms. Kiscoan refused medical treatment and refused to leave the property. (Complaint, Doc. #1, ¶ 31).

9. Officers Jenkins and Clark advised Ms. Kiscoan several times that she needed to leave the property and she refused to obey their lawful commands. (Complaint, Doc. #1, ¶ 32).

10. Officer Jenkins determined that based on the appearance of Ms. Kiscoan, she was not in a medical crisis. She was merely not communicating with or listening to the officers. (Jenkins Depo. 31-32:16-2).

11. Officer Jenkins specifically stated that there was nothing that occurred during his interaction with Ms. Kiscoan that indicated she needed to be EPC'd. (Jenkins Depo. 45:5-9 and 48:14-19).

12. Officer Clark also states that he felt her mental condition was normal based on looking at her. (Clark Depo. 23:13-14).

13. Officer Clark frequently encounters individuals who do not talk to him, but acknowledges that this is not along going to be a sign of mental illness. (Clark Depo. 35-36).

14. Officer Clark further states that he saw nothing which would require an EPC, specifically that nothing indicated Ms. Kiscoan was mentally ill and dangerous. (Clark Depo. 33-34:23-15).

15. Officers then arrested Ms. Kiscoan and transported her to Douglas County Correctional Center where she was booked for trespassing. (Complaint, Doc. #1, ¶ 33).

16. Ms. Kiscoan died due to an untreated medical condition on September 28, 2017 while incarcerated in the Douglas County Correctional Center . (Complaint, Doc. #1, ¶ 2).

17. At the time of the officer's encounter with Ms. Kiscoan, the Omaha Police Department had a constitutional policy in place regarding Mental Health Response. (Mental Health Response - Adults)

18. The Mental Health Response Policy requires triennial review of the policy. (Mental Health Response - Adult).

19. The Mental Health Response policy of the Omaha Police Department lays out procedures for when an officer self-initiates contact with an individual or when an officer is contacted to interact with an individual away from a medical facility. (Volenec Depo. 48-49:24-14).

20. Officer Jenkins had been trained on this policy beginning in July 2015 at the Omaha Police Department Training Academy. (Jenkins Depo. 9-10:24-2).

21. Officer Clark had been trained on this policy beginning in July 2015 at the Omaha Police Department Training Academy. (Clark Depo. 4:4-6).

22. Sgt. Volenec had been trained at the Omaha Police Department Training Academy in 1998. (Volenec Depo. 23:13-15).

23. Officers of the Omaha Police Department receive ongoing training after they have left the academy in the form of training bulletins, or their in-service training requirements. (Jenkins Depo. 11:9-18, Clark Depo. 18:9-14, and Volenec Depo. 23-24:20-4).

> a. Training bulletins are sent to the officers through their computer system called Power DMS, which alerts the officers to revisions of any policy or procedure. (Jenkins Depo. 11-12:23-5).
>
> b. In-service training is classroom, and hands-on, training related to specific topics. (Jenkins Depo. 15:10-19)

24. Specifically, in 2016 one of the in-service topics was related to mental health. (Jenkins Depo. 15-16:23-2)

25. Officer Jenkins stated that he would not override the opinion of the medical professionals, which was to not EPC Ms. Kiscoan. (Jenkins Depo. 48-49: 20-15).

26. Officer Cortes stated that he would trust the decision of medical professionals, and rely on their decisions in regards to the medical and mental health of individuals. (Cortes Depo. 33-34)

27. Sgt. Volenec also explains that as a police officer they have limited training in regards to medical and mental health, compared to the medical professions who work at the hospital, and therefore, he would trust their decision, and not contradict them. (Volenec Depo. 45:4-17).

## STANDARD OF REVIEW

Summary judgment is appropriate when, viewing the facts and the inferences in the light most favorable to the nonmoving party, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The plain language of Rule 56(c) mandates the entry of summary judgment … against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may be reasonably resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "A party seeking summary judgment always bears the initial responsibility of informing the district court of the

5

basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact." *Celotex* at 323.

In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 106 S.Ct. 1348 (1986) (emphasis in original). A "genuine" issue of material fact is more than "some metaphysical doubt as to the material facts." *Id.*

> "[T]he mere existence of some alleged factual dispute between the parties is not sufficient by itself to deny summary judgment as a matter of law . . . Instead, 'the dispute must be outcome determinative under prevailing law."

*Get Away Club, Inc. v. Coleman,* 969 F.2d 664, 666 (8th Cir. 1992) (citations omitted). *Accord Dico, Inc. v. Amoco Oil Co.,* 340 F.3d 525, 529 (8th Cir. 2003). Moreover, "[t]he party opposing summary judgment cannot rest solely on the pleadings, but instead must set forth specific facts showing there is a genuine issue of material fact for the trial . . . Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." *Morris v. City of Chilicothe,* 512 F.3d 1013, 1018 (8th Cir. 2008), quoting *Morgan v. A.G. Edwards,* 486 F.3d at 1039. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " *Moore v. Indehar*, 514 F.3d 756, 764 (8th Cir. 2008), (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, (1986)).

**ARGUMENT**

**I.**

6

## FAILURE TO TRAIN

Defendants are entitled to Summary Judgment because Plaintiff has failed to present evidence that the City Omaha deliberately failed to train its officers and also that the undisputed facts demonstrate the City's mental health training is sufficient.

In *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the United States Supreme Court held that a political subdivision may be liable under 42 U.S.C. § 1983 for (1) official written policies, ordinances, or regulations, practices, or (2) unofficial customs which have not received formal approval through the governing body's official decision making process, but are so persistent and widespread they are considered permanent and well settled. *Id*. at 691. In order to base § 1983 liability on inadequate training, Plaintiff must show that "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 103, L.Ed.2d 412 (1989). This "deliberate indifference" requires a showing that City policymakers chose one course of action from a number of different alternatives. *Id.*

Plaintiff will not be able to present any evidence to support this claim. Plaintiff generally alleges that the City "failed to train law enforcement officers to identify when a person should be placed in emergency protective custody" (Complaint Doc. #1, ¶ 52); and by "failing to recognize the warning signs of a mentally ill and dangerous person" (Complaint Doc. #1, ¶ 53). Plaintiff does not allege that the City's policy is unconstitutional.

**A.      There is No Evidence of Deliberate Indifference in the officers' Training Which Could be Causally Linked to Ms. Kiscoan's Death.**

The United States Supreme Court has held, in the absence of an unconstitutional official municipal policy, that "inadequacy of police training may serve as the basis for § 1983 liability

7

**only** where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact," *City of Canton, Ohio v. Harris*, 489 U.S.378, 388, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989) (emphasis added). The Court continued by stating that "municipal liability under § 1983 attaches where – and only where – a deliberate choice to follow a course of action is made from among various alternatives' by city policymakers." *Id*. at 389.

Although a municipality may be held liable under § 1983 for failure to train its employees, the Supreme Court in *Connick v. Thompson*, 563 U.S. 51, 61, 131 S.Ct. 1350, 1359, 179 L.Ed.2d 417 (2011) held that a "municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train," finding that "'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id*., quoting *Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 410, 117 S.Ct. 1382, 1391, 137 L.Ed.2d 626 (1997).

Evidence sufficient to satisfy such a stringent standard is simply lacking in this case. Officer Jenkins detailed the training that officers with the Omaha Police Department receive during the course of his deposition. (Jenkins Depo. 9-12). In it he set forth the types, frequency, and duration of training that he received as a police officer with the City of Omaha. Officers begin their training at the Omaha Police Academy, which lasts approximately 22-24 weeks. (Jenkins Depo. 7-10). The Academy included portions on mental health training, including instruction from mental health practioners. (Jenkins Depo. Vol. 2 76:4-8). Following completion of the Omaha Police Academy officers have on the job training, which has included classroom training on recognizing mental health issues in potential persons of interest and alcohol and narcotic impairment. (Jenkins Depo. 11-12).

Also, frequent training on the policies and procedures when they are updated. Officers

8

testified that the update is brought to their attention by a supervisor at roll call, and that he was required to sign a form indicating that he read and understood the updated policy change. (Jenkins Depo. 11-14).

The officers received extensive classroom and real-world training in the mental health and general police policies and procedures with the City of Omaha Police Department. This training satisfies the requirements imposed by the Fourth and Fourteenth Amendments for use of force training, and the Plaintiff's failure to train claims must be dismissed.

The officers' actions are in line with the recent Eighth Circuit Court of Appeals case

> Accordingly, we now make explicit that which has long been implicit in our case law and align our circuit with the unanimous consensus in all other circuits. We conclude that only probable cause that a person poses an emergent danger—that is, one calling for prompt action—to herself or others can tip the scales of the Fourth Amendment's reasonableness balancing test in favor of the government when it arrests an individual for a mental-health evaluation because only probable cause constitutes a sufficient "governmental interest" to outweigh a person's "interest in freedom."[5] *See Harris*, 747 F.3d at 1017; *Dunaway v. New York*, 442 U.S. 200, 208, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979) ("The long-prevailing standards of probable cause embod[y] the best compromise that has been found for accommodating the often opposing interests in safeguarding citizens from rash and unreasonable interferences with privacy and in seeking to give fair leeway for enforcing the law in the community's protection." (internal quotation marks and brackets omitted)). Officers have probable cause to arrest a person for a mental-health evaluation when "the facts and circumstances within ... the officers' knowledge and of which they had reasonably trustworthy information are sufficient ... to warrant a man of reasonable caution" to believe that the person poses an emergent danger to himself or others. *Cf. Baribeau v. City of Minneapolis*, 596 F.3d 465, 474 (8th Cir. 2010) (quoting *Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)); *Cantrell*, 666 F.3d at 923 (articulating a similar standard); *Cloaninger*, 555 F.3d at 334 (same).

*Graham v. Barnette*, No. 19-2512, 2021 WL 3012338, at *8 (8th Cir. July 16, 2021)

Plaintiffs may attempt to criticize the training the officers received as insufficient. However, to succeed on that type of claim they must show that "the need for more or different

9

training was so obvious and the inadequacy so likely to result in the violation of constitutional rights." *Liebe v. Norton,* 157 F.3d 574, 579 (8th Cir.1998); *see also Jennings v. Wentzville R–IV Sch. Dist.,* 397 F.3d 1118, 1122–23 (8th Cir.2005) ("effective training need not specifically address every conceivable situation an employee may encounter"). The Plaintiffs cannot make this showing. Moreover, the record does not show that the City or any of the individual defendants had any indication that their policies were likely to result in a constitutional violation. Accordingly, this argument, if raised, must fail as a matter of law.

Plaintiffs have also sued Douglas County and CHI Health (in separate lawsuits) who are more appropriately liable for the unfortunate death of Ms. Kiscoan.

WHEREFORE, Defendants pray that this Court will issue an Order dismissing the claims of the Plaintiff for failure to state a claim for which relief could be granted.

DATED this 2nd day of August, 2021.

                                                      CITY OF OMAHA,
                                                      Defendant,

                                                      /s/ Michelle Peters_____
                                                      MICHELLE PETERS, No. 20021
                                                      Deputy City Attorney
                                                      Jared Dean, No.26314
                                                      Assistant City Attorney
                                                      Attorneys for the Defendant
                                                      1819 Farnam Street, Suite 804
                                                      Omaha, NE 68183
                                                      Telephone: (402) 444-5115
                                                      michelle.peters@cityofomaha.org
                                                      jared.dean@cityofomaha.org

CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of August, 2021, I filed the foregoing **BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system which sent a copy of the foregoing to all of the attorneys of records in this case, and sent notification of such filing by U.S. Postal Service, postage prepaid to Christopher P. Welsh, 9290 West Dodge Road, 204 The Mark, Omaha, NE 68114.

/s/ Michelle Peters