IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LORRAINE DUGGIN, individually and as Co-Special Administrator for the Estate of Susan D. Kiscoan, deceased; and JOHN (JACK) KISCOAN, individually and as Co-Special Administrator for the Estate of Susan D. Kiscoan, deceased;<br><br>Plaintiffs,<br><br>vs.<br><br>THE CITY OF OMAHA, NEBRASKA;<br><br>Defendant. | 8:19CV453<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on the Defendant's Motion for Summary Judgment, Filing No. 30. Plaintiffs Lorraine Duggin and John (Jack) Kiscoan brought this action individually and as co-special administrators for the Estate of Susan D. Kiscoan ("Kiscoan"), deceased, for negligence and for violation of constitutional rights under 42 U.S.C. § 1983. The Court previously dismissed Plaintiffs' negligence claim and their § 1983 claim to the extent it alleged anything other than a failure to train by the City of Omaha (*see* Filing No. 11).[1] For the reasons stated below, Defendant's Motion will be granted.

I.  **BACKGROUND**

Unless otherwise indicated, the following facts are taken from those parts of the Defendant's brief that are supported by pinpoint citations to admissible evidence in the record, in compliance with NECivR 56.1 and Fed. R. Civ. P. 56. Plaintiffs' Brief in

---

[1] Plaintiffs also asserted claims against Omaha Police Officers David Volenec, Michael Jenkins, and Cortes Clark in their official capacities. The Court's Memorandum and Order at Filing No. 11 effectively dismissed any claim against the officers in their official capacities.

1

Opposition failed to follow NECivR 56.1(b)(1). Although most facts appear to be undisputed, Plaintiffs only responded directly to one of Defendant's numbered statement of facts and submitted only their own Complaint as evidence. The Court has attempted to discern facts still in dispute but, pursuant to NECivR 56.1(b)(1), all properly referenced material facts in Defendant's Statement of Facts, Filing No. 31, are considered admitted for purposes of this Motion.[2]

On September 14, 2017, Kiscoan walked to Omaha's Eppley Airfield to seek medical help. Once at the airport, Omaha paramedics eventually came into contact with Kiscoan and noted that she appeared to be dehydrated. The paramedics transported Kiscoan to CHI Health Emergency Department near the Creighton University campus (the "CHI Health Clinic") for treatment. Once at the ER, Kiscoan refused medical treatment and requested that she be transferred to another hospital. Hospital staff advised her that if she refused treatment, she would have to leave and find her own transportation to another facility. Kiscoan refused to leave, and CHI staff contacted the Omaha Police Department for assistance.

On that day, Sgt. David Volenec was working as an off-duty police officer, assisting security at the CHI Health Clinic. Sgt. Volenec helped CHI security escort Kiscoan out of the ER. Officers Michael Jenkins and Cortez Clark were dispatched to the hospital where security informed the officers that Kiscoan refused medical treatment and refused to leave

---

[2] Some of Defendant's background facts are supported only by citations to Plaintiffs' Complaint. Plaintiffs' attempt to respond to some of these facts includes additional allegations in their Complaint. The Court notes that on summary judgment, "[t]he moving party bears the burden to demonstrate that there is no issue of material fact. The plaintiff may not then simply point to allegations made in her complaint but must identify and provide evidence of 'specific facts creating a triable controversy.'" *Howard v. Columbia Pub. Sch. Dist.*, 363 F.3d 797, 800 (8th Cir. 2004) (quoting *Jaurequi v. Carter Mfg. Co.*, 173 F.3d 1076, 1085 (8th Cir. 1999)). The Court's summary of the facts includes some allegations from the Complaint, but Plaintiffs cannot rebut any asserted fact solely by reference to their own Complaint.

the property. Officers Jenkins and Clark told Kiscoan several times that she needed to leave the property, but she refused to comply. Kiscoan did not respond to any communication.

Officer Jenkins determined that based on Kiscoan's appearance, she was not in a medical crisis. Jenkins believed she was voluntarily choosing not to communicate with or listen to the officers. Officer Jenkins testified that nothing occurred during his interaction with Kiscoan to indicate she needed to be placed in emergency protective custody (EPC). Jenkins Dep.45:5-9 and 48:14-19.[3] Officer Jenkins did not speak to any of the care providers at CHI, nor was he made aware of Kiscoan's mental health history. Jenkins Dep., 29:2- 4. Officer Clark also testified that based on Kiscoan's appearance, she was not experiencing a mental health crisis. Clark Dep.23:13-14. Officer Clark explained that although he frequently encountered individuals who would not talk to him, in his experience, silence alone was a sign of mental illness. Clark Dep.35-36. Officer Clark testified that nothing about Kiscoan's behavior suggested she needed to be placed in EPC, and nothing suggested she was mentally ill or dangerous. Clark Dep.33-34:23-15.

After interacting with Kiscoan at the CHI Health Clinic, officers arrested her and transported her to the Douglas County Correctional Center where she was booked for trespassing. On September 28, 2017, while incarcerated in the Douglas County Correctional Center, Kiscoan died due to an untreated medical condition.

At the time of the officers' encounter with Kiscoan, the Omaha Police Department had a policy in place for Mental Health Response (the "Policy"). Filing No. 32-1. The

---

[3] Deposition citations in this Memorandum and Order will refer to the individual deposed. The depositions referenced in this Memorandum and Order are found at Filing Nos. 32-2 through 32-5.

3

Policy requires triennial review. The Policy lays out procedures for when an officer self-initiates contact with an individual or when an officer is contacted to interact with an individual away from a medical facility. See *id.*; Volenec Dep.48-49:24-14. All officers involved had been trained on the Policy, beginning at their time at the Police Academy, and the Policy required triennial review. Officers also received ongoing training, including training on mental health, after they have left the Academy in the form of training bulletins, or their in-service training requirements. Jenkins Dep.11:9-18, Clark Dep.18:9-14, and Volenec Dep.23-24:20-4. To determine whether a person should be placed in EPC, the Policy directs officers to be aware of abnormalities in perception, thought, and mood. Policy at 2-3. Abnormalities in mood include a "[r]educed emotional response or emotional flatness." Policy at 3.

## II. SUMMARY JUDGMENT STANDARD

"Summary judgment is proper 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting Fed. R. Civ. P. 56(c)(2)). The court views facts in the light most favorable to the nonmoving party, and makes no determinations of credibility; nor does it weigh the evidence or draw inferences, as those functions belong to the jury. *Cottrell v. Am. Fam. Mut. Ins. Co., S.I.*, 930 F.3d 969, 971–72 (8th Cir. 2019). A party opposing a properly supported motion for summary judgment may not rest on the allegations contained in the pleadings, "but must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The record must indicate an absence of a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Northport Health Servs. of Arkansas, LLC v. Posey*, 930 F.3d 1027, 1030 (8th Cir. 2019). Facts that, if altered, affect the outcome of a lawsuit under applicable substantive law, are material. *Cottrell*, 930 F.3d at 972. A material fact dispute is "genuine" if each party has supplied some evidence that is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* If "reasonable minds could differ as to the import of the evidence," summary judgment should not be granted. *Anderson*, 477 U.S. at 250. "[C]redibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions." *Id.* at 255.

## III.  DISCUSSION

Although Congress intended "municipalities and other local government units to be included among those persons to whom § 1983 applies," *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 688 (1978), a local governing body cannot be held liable under section 1983 for an injury inflicted solely by its employees or agents on a theory of respondeat superior. *Irvin v. Richardson*, 20 F.4th 1199, 1208 (8th Cir. 2021) (citing *S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017). "Liability for a constitutional violation will attach to a municipality only if the violation resulted from an official municipal policy, an unofficial custom, or a deliberately indifferent failure to train or supervise an official or employee." *Bolderson v. City of Wentzville, Missouri*, 840 F.3d 982, 985 (8th Cir. 2016) (citation omitted).

Plaintiffs claim the City of Omaha was deliberately indifferent in failing to train and supervise its officers. A municipality may be subject to § 1983 liability "where (1) the

5

[municipality's] ... training practices [were] inadequate; (2) the [municipality] was deliberately indifferent to the rights of others in adopting them, such that the 'failure to train reflects a deliberate or conscious choice by [the municipality]'; and (3) an alleged deficiency in the . . . training procedures actually caused the plaintiff's injury." *Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989)).  The evidence does not support a finding that Plaintiffs can meet any of these elements.

### A. Adequacy of the Training

The evidence does not show that the officers' training was inadequate.  Even where training is minimal, "that finding alone will not satisfy a § 1983 claim for failure to train."  *Parrish*, 594 F.3d at 997 (citing *City of Canton, Ohio*, 489 U.S. at 390–91 ("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [local government]....").  Rather, to meet this element, Plaintiffs must show

> that in light of the duties assigned to specific officers ... the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [municipality] can reasonably be said to have been deliberately indifferent to the need.

*City of Canton, Ohio*, 489 U.S. at 390.  "In other words, [Plaintiffs] must demonstrate that the [City of Omaha] 'had notice that its procedures were inadequate and likely to result in a violation of constitutional rights.'"  *Parrish*, 594 F.3d at 998 (quoting *Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996)).

The City of Omaha offered some evidence that the involved officers received regular training on the Policy and on identifying and handling individuals with mental illness.  In Deposition, Officer Jenkins detailed the training that officers with the Omaha Police Department receive.  Jenkins Dep.at 9-12.  He described the types, frequency,

6

and duration of training that he received as a police officer with the City of Omaha. Each of the officers noted that training at the Police Academy included portions on mental health training, including instruction from mental health practitioners. Jenkins Dep.Vol. 2 76:4-8. Following completion of the Omaha Police Academy, officers received regular training on recognizing mental health issues in potential persons of interest and alcohol and narcotic impairment. Jenkins Dep.11-12. They all also testified that they have responded to hundreds of calls regarding mentally ill persons. The Eighth Circuit has concluded that this type of training can support a showing that training was not inadequate. See *Andrews*, 98 F.3d at 1073 (noting that officers received "two weeks of on-the-job training and had attended the police academy.").

Moreover, even if the City of Omaha's Policy and training were vague or broad, Plaintiffs have presented no evidence that the City of Omaha had notice that its training procedures would result in a deprivation of constitutional rights. Plaintiffs' assertions about the adequacy of the training lack any evidentiary support. Moreover, Plaintiffs' arguments focus on individual actions the officers *could* have taken to become aware of Kiscoan's mental health issues. However, the City of Omaha is not required to train officers for every potential issue that they may encounter in the field. See *Jennings v. Wentzville R-IV Sch. Dist.*, 397 F.3d 1118, 1122–23 (8th Cir. 2005) ("[E]ffective training need not specifically address every conceivable situation an employee may encounter"). Plaintiffs fail to present any evidence that the City of Omaha should have been aware that its training would cause officers to fail to inquire about an individual's mental health history. Nor have Plaintiffs presented any evidence that such a failure would likely result

7

in the deprivation of constitutional rights under these specific circumstances. Accordingly, there is no triable issue on whether this element was satisfied.

### B. Deliberate Indifference

Plaintiffs' burden to prove deliberate indifference is high. "In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city could have done to prevent the unfortunate incident." *City of Canton, Ohio*, 489 U.S. at 389 (internal quotation omitted). "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality ... can a city be liable for such a failure under § 1983." *City of Canton, Ohio*, 489 U.S. at 389; *see also Mendoza v. United States Immigr. & Customs Enf't*, 849 F.3d 408, 420 (8th Cir. 2017). "Deliberate indifference requires proof the municipality disregarded a known or obvious consequence of its action or inaction." *Robbins v. City of Des Moines*, 984 F.3d 673, 682 (8th Cir. 2021) (citing *Connick v. Thompson*, 563 U.S. 51, 61 (2011)); *see also Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1217 (8th Cir. 2013) ("Absent some form of notice, [a] city cannot be deliberately indifferent to the risk [of] its training or supervision ...."). The Supreme Court has explained that "'[m]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives' by city policymakers." *City of Canton, Ohio*, 489 U.S. at 389 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 470 (1986) (plurality opinion)).

Plaintiffs present no evidence that suggests the City of Omaha failed to train its officers about mental health issues. Plaintiffs specifically argue that the City was deliberately indifferent in failing to train officers to make further inquiry where an individual

8

is refusing medical treatment at a medical facility. Plaintiffs offer no evidence or support that a reasonable officer would interrogate medical staff about their decision to discharge a person who is refusing medical treatment but refusing to leave a medical facility. Nor do Plaintiffs offer evidence or support that a reasonable officer would request emergency placement of a person that was just discharged from a medical facility to the same or a different medical facility merely because the person would not speak to officers. In sum, nothing in the record suggests that what happened to Kiscoan was "'so obviously' the consequence of a systemic lack of training, as opposed to the decisions of individual officers, that the need for different or additional training was plain." *See, Graham v. Barnette*, 5 F.4th 872, 891 (8th Cir. 2021), *reh'g denied* (Aug. 20, 2021)(8th Cir. 2021) (citing *Dick v. Watonwan Cty.*, 738 F.2d 939, 942 (8th Cir. 1984)). Accordingly, Plaintiffs have not met their high burden of showing that the City of Omaha was deliberately indifferent.

    **C.    Causation**

Finally, Plaintiffs have not established a triable issue as to whether the City's alleged lack of training caused Kiscoan's death. "[C]ausation is generally a question of fact." *Parrish*, 594 F.3d at 1000; *Ricketts v. City of Columbia, Mo.*, 36 F.3d 775, 779 (8th Cir. 1994). "However, where the causal link is too tenuous such that 'the question is so free from doubt as to justify taking it from the [fact finder]' we may decide the issue as a matter of law." *Id.* (quoting *Ricketts*, 36 F.3d at 779–80; *see also Andrews*, 98 F.3d at 1077 (concluding that summary judgment was appropriate on causation because plaintiff "could not even raise[ ] a question of fact as to causation")).

The parties do no dispute that Kiscoan died from complications relating to her Addison's disease left untreated while at the Douglas County Correctional Center. Her tragic death occurred two weeks after her arrest. Yet, Plaintiffs allege, without evidence, that if Officer Jenkins had taken the time to make further inquiry of the medical care providers about Kiscoan's condition, he would have obtained information which would then have led him to contact mental health professionals who could have steered her toward the appropriate medical facility, rather than the county jail. This assertion is speculative, and Plaintiffs offer no evidence to support this assertion. It presumes that proper training would have enabled Officer Jenkins to ask appropriate questions and receive appropriate answers that would allow him to conclude that Kiscoan would be placed in EPC. Plaintiffs' argument also speculates that Kiscoan's care in EPC would have prevented her death. Plaintiffs fail to present any evidence to support the assertion that proper training would have prevented a death that occurred two weeks after Kiscoan's arrest while she was in the custody of a separate municipal entity. Without further evidence, this connection is too tenuous to support a causal connection between the alleged failure to train and Kiscoan's tragic death.

IV. **CONCLUSION**

Plaintiffs have not met their heavy burden of showing that the City of Omaha's training was constitutionally inadequate or that any failure to train was the result of deliberate indifference. Moreover, the causal connection between the alleged failure to train and Kiscoan's death is tenuous and unsupported by any evidence.

Accordingly,

1. Defendant's Motion for Summary Judgment, Filing No. 30, is granted;

2. This action is dismissed, with prejudice; and

3. A separate judgment will be entered.

Dated this 28th day of January, 2022.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge